IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 21-42-RGA |
| ) | |
| MICHAEL PROTACK, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM ORDER
DENYING MOTION FOR COMPASSIONATE RELEASE

Michael Protack, an inmate, filed a motion for compassionate release on May 20, 2022. (D.I. 53). The Government responded. (D.I. 59). Protack advised he would be filing an amended motion. (D.I. 61). I appointed counsel. (D.I. 64). On September 15, 2022, counsel filed an emergency motion for compassionate release. (D.I. 65). The Government responded. (D.I. 67). Protack replied. (D.I. 68). Protack and the Government submitted additional correspondence. (D.I. 69, 70, 72, 74, 77).

I sentenced Protack to twelve months in prison. Protack is scheduled for release on December 20, 2022. He was incarcerated from June 11, 2021, to August 25, 2021, and then from March 7, 2022, to present. Protack made an administrative request for compassionate release, which was denied. (D.I. 59-4).

Much of Protack's motion involved allegations of inadequate medical care at FCI Terminal Island. Without a hearing, it would be hard to conclude that this was true.

But Protack also alleges various medical conditions that are serious and which might be exceptional circumstances that would make him eligible for release. To wit, hypertension,

coronary artery disease, heart failure, and labile angina. (D.I. 65 at 2). His main complaint is that he does not receive "an urgent response to his medical needs by the staff at FCI Terminal Island." (*Id.*). He says his "dangerously high blood pressure" goes untreated. (*Id.* at 5). Two of his conditions (heart failure and severe hypertension) place him at greater risk for becoming severely ill from COVID-19. (*Id.* at 6).

Protack states that he has "extraordinary and compelling reasons" for compassionate release. (*Id.* at 8).

The Government's response disputes the criticisms of his care. (D.I. 67). In its earlier response (D.I. 59), the Government disputed the health conditions are "extraordinary and compelling reasons."

It is the inmate's burden to show that I should grant the compassionate release motion. I am not convinced that Protack has shown that the standard of medical care at FCI Terminal Island is deficient. Essentially, I have medical records through the middle to end of May (D.I. 59-2) with one additional page sent to me in October (D.I. 70 & 71). There is not, realistically, time to develop the record, perhaps with a hearing and/or expert testimony, to determine whether he is getting adequate care, given that he is due to be released in less than six weeks anyway.

Thus, I am left with the undisputed assertions that he has various serious medical conditions, the disputed assertions about his treatment, and that he is incarcerated. I have been provided with about 240 pages of medical records. (D.I. 59-2). I reviewed them. I note blood pressure readings at various times. Most of them predate his hospitalization at Torrance from about April 16-22, 2022. The readings before hospitalization were at times what I believe to be

dangerously high. But the last two readings are not life threatening. On May 19, 137/83; on April 22, 126/83.[1] I am thus unconvinced that Protack's life is in danger at the present time.

He has serious medical conditions. I assume for present purposes they could be extraordinary and compelling reasons for his release. I nevertheless am not going to grant the motions for compassionate release. The sentencing factors do not support the grant of the motion. What I said at sentencing is still true. Here is an edited version.

> [I consider] the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.
> What you did is essentially a campaign of terror. It was a campaign of terror that was done over at least a few months. It was a campaign where you tried to cover your tracks. I don't know how many bitter divorce proceedings the [lawyer] victim is involved in, but I would have guessed that at some point the victim would report these things to law enforcement. Even though you would be a prime suspect, the fact of the matter is it took a lot of law enforcement effort to track down that, in fact, these things did originate with you. I'm guessing, though it is never said anywhere, that it included DNA testing on a postage stamp, but maybe I'm misunderstanding how exactly they tracked it back to you. In any event, it's a very serious offense from the point of view of the time and effort you put into it. It's a very serious offense from the point of view of the victim who has some unknown enemy out there threatening him, and he doesn't know how serious the person is about carrying it out. He doesn't know how capable the person is of carrying it out. I don't actually know what his reaction to all of this was, but if he were physically affected by it and started buying home security systems and doing other things, that would not surprise me. That would be a rational reaction, at least one of the rational reactions to this. It's very serious, even though my own belief is you didn't intend to actually kill somebody. That's the reason why the Sentencing Guidelines suggest that you should be incarcerated—it is a serious crime.
> I need to consider the need for adequate deterrence to you, and to protect the public from you. I believe you when you say that you've learned a lesson here and won't be doing anything like this again in the future. I feel fairly confident that you mean it, and that this training that you had and all your friends that wrote a letter talking about what you learned in the Marines, which somehow or another seemed to escape you for this crime, will guide your future behavior. I don't think from that point of view that I need to punish you more in order to prevent you from doing this again.
> I've considered your personal characteristics, and you certainly have done a lot of good in your life. You served your country in a very responsible position as a pilot in the

---

[1] Protack has submitted miscellaneous pages of medical records subsequent to the bulk production at D.I. 59-2. On August 12, 2022, he had a blood pressure reading of 162/96. (D.I. 74, Ex. A, at 4 of 6). On August 29, 2022, he had three blood pressure readings, at least one of which was extremely high. (*Id.*, at 6 of 6). On October 7, 2022, he had blood pressure readings that were quite high. (D.I. 74, Ex. B, at 4 of 6).

Marines. You had a good family life and raised two children, presumably with your wife, and the children turned out to be productive citizens. The time in particular that you spent with the Scouts is a good public service to youth. You continued to donate that time even when your sons were no longer involved. So, that's a very positive thing. You've participated in the public life of the country by being involved in political activities. That's a positive thing. You have come across a lot of people between the Air Force, the Scouts and the training activities who think very highly of you. There was one [long] letter that I read describing many positive things about you, but the sentence that I underlined because it stood out to me was, "When I heard about what he was accused of, I was shocked. The allegations were so against the person I knew and love that they were unbelievable." It must have come as a shock to a lot of the people who wrote the letters. I gather some of them haven't really heard entirely what it is you did do. But, in any event, the point is that it is out of character.

   There is some underlying issue, I think, that caused you to deviate so much not only from what you have been, but also from what's expected of a citizen. Your personal characteristics weigh in your favor, too. But it's hard to get past the actual nature of the crime, and so, therefore, it's my opinion that in order to take into account the nature and circumstances of the offense, and to promote respect for the law, and to provide a just punishment for the offense that I am going to sentence you within the guidelines. I'd probably sentence you to more, but for the good things in your past.

   I continue to believe that the reasons that I analyzed at sentencing required a twelve-month sentence to meet the goals of sentencing, and that, because of them, Protack's health issues do not rise to the level of extraordinary and compelling circumstances justifying a reduction in sentence.

   IT IS SO ORDERED this 14th day of November 2022.

                      *[signature]*
                    United States District Judge